IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DANIEL F. RING, JR.,<br><br>     Plaintiff,<br><br> vs.<br><br>TECK-POGO, INC., and<br>SECURITAS SECURITY SERVICES<br>USA, INC.,<br><br>     Defendants. | Case No. 3:06-cv-133   TMB<br><br>O R D E R |

  Plaintiff Daniel F. Ring, Jr. ("Ring") brought suit on February 14, 2006, against Defendants Teck-Pogo, Inc. ("Teck-Pogo") and Securitas Security Services USA, Inc. ("Securitas"), in state court, seeking to recover unpaid overtime compensation under the Alaska Wage and Hour Act ("AWHA"), AS § 23.10.110, AS § 23.10.060 and AS § 23.05.140[1]. Teck-Pogo has tendered this claim to Securitas and Securitas now represents both party defendants. Docket 9, fn. 1.

  Securitas removed this matter to Federal Court on June 2, 2006, alleging that this Court has diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. Ring has moved to remand the case to state court, and seeks attorney fees associated with the removal. Securitas has filed its opposition to remand, arguing that Teck-Pogo has been fraudulently joined in this matter to defeat diversity, and Ring has replied. Oral argument has not been requested. Having reviewed the pleadings, the Court now enters the following Order.

---

[1]Ring has also asserted claims against Securitas for breach of contract and breach of implied covenant of good faith and fair dealing. However, as these are not asserted against Teck-Pogo, it is not necessary to address these claims to determine whether remand is appropriate.

**FACTUAL BACKGROUND**

In considering a claim of fraudulent joinder, the Court accepts the facts presented in the Complaint as it would for a Rule 12(b)(6) analysis, and ignores all but procedural defenses. TPS Utilicom Servs. v. AT&T Corp., 223 F. Supp. 2d 1089, 1102 (D. Cal. 2002). However, "the defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." Id. (quoting McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)).

Teck-Pogo owns and operates the Teck-Pogo mine located near Delta Junction, Alaska, and is incorporated under the laws of Alaska. Docket 9. Teck-Pogo contracted with a third party to provide various services related to the operation of the mine. That party in turn contracted with a fourth party to provide some of the mine related services. The fourth party then contracted with Defendant Securitas to provide security and first aid services at the mine. Securitas is a Delaware corporation.

In April of 2004, Ring applied to Securitas for a job as a Guard/Medic EMT-III at the Teck-Pogo mine. On April 13, 2004, Securitas offered Ring the position, which he accepted. Securitas provided him with required employment information and documentation. Ring completed a W-4 for Securitas and acknowledged receipt of Securitas' Employment Handbook and its Policy Against Harassment. Ring also authorized Securitas to direct deposit his wages and deduct wages for a security license. Securitas was the only company/entity that supervised Ring and the only company/entity that had the authority to discipline or terminate his employment at the mine. Securitas determined his classification as an employee entitled to overtime, monitored his straight-time versus overtime hours, and paid his wages. Ring filed this action against Securitas and Teck-

Pogo seeking compensation for overtime he worked between April 20, 2004, and November 4, 2004. Docket 16.

## **DISCUSSION**

A defendant may generally remove to the appropriate federal district court "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(a). However, a case shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447( c). Ring moves for an order of remand pursuant to this section, arguing that removal was improper because complete diversity is lacking. Docket 5. Ring asserts that since Teck-Pogo is an Alaska entity, and since all claims were brought under state law, a remand to state court is required.

The burden of establishing federal jurisdiction falls to the party invoking the removal statute. California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004). Section 1441(a) "is strictly construed against removal jurisdiction." Id. Securitas asserts that diversity removal was proper, because Ring's claims are premised on an employer-employee relationship. Docket 9. Securitas argues that Ring cannot claim an employee-employer relationship with Teck-Pogo under Alaska law, and Teck-Pogo is therefore fraudulently joined in this claim. Id. Securitas further argues that it, and not Teck-Pogo, was Ring's employer and that Ring cannot allege a claim against Teck-Pogo for which relief can be granted. Id. Securitas asserts that Ring fraudulently joined Teck-Pogo as a defendant to this suit solely to destroy diversity of the parties. Id. Ring,

however, argues that Teck-Pogo and Securitas are "joint employers," and therefore both are proper parties to this claim. Docket 13.

A defendant may remove a civil action that alleges claims against a non-diverse defendant when the plaintiff has no basis for suing the non-diverse defendant. McCabe 811 F.2d, at 1339. "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." Id. at 1339 (quoting Moore's Federal Practice (1986),¶ O.161[2]). Once the joinder of a defendant is deemed fraudulent, "the defendant's presence in the lawsuit is ignored for purposes of determining diversity." Moore v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001).

"Whether or not a plaintiff may recover on the stated claims against the resident defendant does not include consideration of whether, with further discovery, the plaintiff may uncover a factual basis for its claims." TPS, 223 F.Supp. 2d at 1102. Instead of focusing on the "mental state" of the plaintiff, the fraudulent joinder inquiry focuses on the validity of the legal theory being asserted against the non-diverse defendant. Davis v. Prentiss Prop. Ltd., Inc., 66 F.Supp. 2d 1112, 1114 (C.D. Cal. 1999).

The Complaint asserts causes of action against Teck-Pogo under three Alaska statutes. Each of these sections is premised on the relationship between an employee and employer. See AS §23.10.110, AS § 23.10.060 and AS § 23.05.140. Thus, the key to the court's determination as to Teck-Pogo's fraudulent joinder rests on whether Teck-Pogo was Ring's employer.

The Alaska Wage and Hour Act provides that the definitions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-219, are incorporated therein. AS § 23.10.145. The

FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203.  The Ninth Circuit has held that the definition of "employer" under the FLSA "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes."   Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1469 (9th Cir. 1983).

Plaintiff argues that there is a joint employment relationship between Teck-Pogo and Securitas under 29 C.F.R. § 791.2.  Docket 13.

> (a) A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938, since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer. A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case. If all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee, who during the same workweek performs work for more than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act.
>
> On the other hand, if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek. In discharging the joint obligation each employer may, of course, take credit toward minimum wage and overtime requirements for all payments made to the employee by the other joint employer or employers.
>
> (b) Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2.

The determination of whether an entity is a "joint employer" under the FLSA is a question of law. Bonnette, 704 F.2d at 1469. "[W]hether an employment relationship exists depends on the economic reality of the employment situation." Hale v. State of Arizona, 967 F.2d 1356, 1364 (9th Cir. 1992). The test to determine economic reality looks to four factors: "whether the alleged employer (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment, and (4) maintained employment records." Id.; Bonnette, 704 F.2d at 1470. However this is not a "mechanical determination" and should not be "blindly applied." Id. The four Bonnette factors are a "framework for analysis," but "[t]he ultimate determination must be based 'upon the circumstances of the whole activity.'" Id. (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (U.S. 1947)). "Where an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the [FLSA], and is subject to liability." Lambert v. Ackerley, 180 F.3d 997, 1011-1012 (9th Cir. 1999) (quoting Bonnette, 704 F.2d at 1470).

In opposing the Motion to Remand, Securitas relies entirely on <u>Bonnette</u>, and does not address the definition of joint employers under 29 C.F.R. § 791.2.  Securitas argues that it was the only company/entity that supervised Ring and the only company/entity that had the authority to discipline or terminate his employment at the mine.  Teck-Pogo did not hire, supervise, discipline, pay or have the authority to terminate Ring.  Docket 9 at 4.  Securitas offers affidavits that indicate that Securitas was Ring's employer - not Teck-Pogo.  Docket 9 at 8.  Securitas argues that under the <u>Bonnette</u> factors, Teck-Pogo clearly was not an employer in this case.  Ring, in response, argues that the same affidavits are evidence that there <u>is</u> a joint employment relationship.  Docket 13.

Neither party has briefed eight secondary factors identified by the Ninth Circuit, which may be used in addition to <u>Bonnette</u>, to determine whether a joint employer relationship exists:

(1) whether the work done by the employee was analogous to a "specialty job on the production line";

(2) whether the responsibility under the contract was standard for the industry and could be passed from one contractor to another without "material change" and little negotiation;

(3) whether the purported joint employer owns or has an interest in the "premises and equipment" used for the work;

(4) whether the employees had a "business organization that could [] shift as a unit from one worksite to another;"

(5) whether the services rendered were "piecework" and did not require special "skill, initiative or foresight";

(6) whether the employee had "an opportunity for profit or loss" depending upon the employee's managerial skill;

(7) whether there was "permanence in the working relationship;" and

(8) "whether the service rendered [was] an integral part of the alleged [joint] employer's business."

7

Torres-Lopez v. May, 111 F.3d 633, 640 (9th Cir. 1997).  Although the facts before the Court indicate that Ring's claim against Teck-Pogo may fail under the four Bonnette factors, and although the parties have not addressed Torres-Lopez, the Torres -Lopez factors lend credibility to Ring's argument that Securitas and Teck-Pogo are joint employers.

Torres-Lopez involved the Migrant and Seasonal Agricultural Worker Protection Act (AWPA).  Migrant farm works brought action against a cucumber grower for violating the FLSA and the AWPA.  The grower, Bear Creek Farms, argued that it was not an "employer" of the migrant workers, but rather that they had contracted with a farm labor contractor to supply and supervise farmworkers to harvest Bear Creek Farms' cucumber crop.  In exchange, Bear Creek Farms agreed to pay the farm labor contractor fifty percent of the gross proceeds from the sale of the cucumber crop to the cannery.  Id., at 637.  Applying the eight factors above, the Court concluded that Bear Creek Farms was a joint employer of the migrant workers.  Id., at 643-44.  The Ninth Circuit has acknowledged that the Torres-Lopez factors are applicable "to circumstances in which a company has contracted for workers who are directly employed by an intermediary company."  Chao v. A-One Medical Services, 346 F.3d 908, 917 (9th Cir. 2003).  The Ninth Circuit subsequently applied the Torres-Lopez factors in a case involving Air France and its ground handling service companies, thus clearly extending the factors to cases beyond the AWPA.  See Moreau v. Air France, 356 F.3d 942 (9th Cir. 2004).  Chao acknowledges that "our case law contains more examples of such 'vertical' joint employment than examples of 'horizontal' joint employment . . ."  346 F.3d at 917.  The case presently before this Court potentially involves such a "vertical joint employment" situation.

8

Teck-Pogo certainly has in interest in the premises and equipment used for Ring's employment. (Torres-Lopez factor 3). There is no evidence before the Court that Ring and the other EMTs and security personnel were organized as a unit to move from one worksite to another; Ring's job was to work at Teck-Pogo's mine and nowhere else. (Torres-Lopez factor 4). Finally, it is likely that security and EMT personnel were an integral part of Teck-Pogo's mine operation as required safety precautions. (Torres-Lopez factor 8). The Ninth Circuit has not provided clear guidance as to how many of the Torres-Lopez factors are required to find a joint employer relationship. However, since the definition of "employer" under the FLSA is to be interpreted broadly, and more than one of the Torres-Lopez factors support Ring's argument, Ring may have a valid claim against Teck-Pogo as a joint employer. Whether the plaintiff truly had a cause of action against the "sham defendant" is distinct from whether the defendant could propound defenses to an otherwise valid cause of action. Ritchey v. Upjohn Drug Company, 139 F.3d 1313, 1318 (9th Cir. 1998).

> The fact that the party may lose or even the fact that the party will probably lose
> does not affect the party's right to present its claim, make its arguments, and receive
> a ruling from a court with proper jurisdiction. Thus, if a diversity-defeating claim is
> not frivolous, the plaintiff has the right to have it considered by the state court in
> which it was filed.

Davis, 66 F. Supp. 2d at 1115.

As 28 U.S.C. § 1441(a) is strictly construed against removal jurisdiction, and it does not appear that Ring's claim against Teck-Pogo is fraudulent, this is a matter for state court.

**CONCLUSION**

9

For the reasons set out above, the Motion for Remand at Docket 5 is **GRANTED**, and this matter is **REMANDED** to the Superior Court for the State of Alaska, Third Judicial District at Anchorage. Plaintiff's Motion to Amend/Correct Complaint is therefore DENIED as moot, subject to refiling in state court.

Plaintiff's request for attorney fees shall be considered upon submission of his declarations and contemporaneous records in support of attorneys' fees and expenses. Such submissions shall be made within 20 days of the date of this Order, and Defendant shall file its opposition, if any, solely as to the reasonableness of fees and costs, within 15 days thereafter.

Dated at Anchorage, Alaska, this 20th day of December, 2006.

        s/ Timothy M. Burgess
        Timothy M. Burgess
        United States District Judge